**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JOHN M. JENKINS, | : | |
| Petitioner, | : | Case No. 3:04CV324 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| DEB TIMMERMAN-COOPER, Warden, | : | |
| London Correctional Institution, | | |
| | : | |
| Respondent. | | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

The United States Supreme Court observed some twenty years ago: "Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there are often no witnesses except the victim.  A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent." *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987).  This is such a case.  This is also a case demonstrating how very difficult it can be to defend against sexual abuse charges, which typically present defense counsel with abundant strategic challenges.  The result here: a hard-fought trial in the Ohio courts leading to John M. Jenkins' acquittal on one count of rape but his convictions on two other counts of rape and one count of gross sexual imposition.  (Doc. #5, Exhibit 3).

Jenkins, now an inmate in state custody at the London Correctional Institution, brings the

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

present case through counsel seeking a Writ of Habeas Corpus under 28 U.S.C. §2254. The case is before the Court upon Jenkins' Petition (Doc. #1). The Petition raises nine grounds for relief, all but one of which asserts that Jenkins' attorneys throughout the state court proceedings provided him with ineffective assistance in violation of the Fourteenth Amendment to the United States Constitution.

This case is also before the Court upon Respondent's Answer/Return of Writ (Doc. #5), Jenkins' Traverse and Affidavit in Support (Doc. #s 11-12), and the record as a whole. Jenkins has also filed in the record a compact disc (not filed electronically). This disc contains a copy of Jenkins' criminal trial transcript, an obvious source of essential information.

## II. PROCEDURAL HISTORY

### A. Indictment and Trial

On April 17, 2000, a grand jury in the Miami County, Ohio Court of Common Pleas indicted Jenkins on five counts of rape, two counts of sexual battery; and two counts of gross sexual imposition. The charges arose from allegations that Jenkins sexually abused his two stepdaughters, P.G. and E.E., who were minors at the time of the alleged acts. Jenkins pled not guilty; the case proceeded to a jury trial lasting two days.

During trial the prosecutor called E.E. as a witness, who was then twelve years old. E.E. testified that Jenkins sexually abused her and P.G. on numerous occasions. (Doc. #5, Exh. 8 at p. 3). After E.E.'s testimony ended, the prosecutor called P.G. as a witness. Although P.G. began to testify, she could not continue. As a result, she did not testify about any specific alleged instance of sexual abuse against her by Jenkins. *Id*. The trial judge, upon the prosecutor's motion, dismissed the charges against Jenkins related to P.G. *Id*. The trial

2

proceeded against Jenkins only on the charges related to E.E.

During its deliberation, the jury (through the foreperson) indicated to the trial judge that it had reached a verdict on one of the charges but was divided on the three other charges.  (Doc. #5, Exh. 14 at p.7).  "The trial court then gave an additional instruction pursuant to ***State v. Howard*** (1989), 42 Ohio St.3d 18...."  (Doc. #5, Exh. 14 at p. 7). The Ohio Court of Appeals later quoted the trial judge's *State v. Howard* instruction as follows: "'If there is a disagreement all jurors should re-examine their positions given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubts are reasonable considering that it is not shared by others, equally honest, who have heard the same evidence with the same desire to arrive at the truth and under the same oath.  Likewise jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of the judgment not concurred by all other jurors.'" *Id*. at pp. 7-8.

In the instant federal habeas case, Jenkins' counsel describes these events and argues as follows: "[The jury] emerged as a hung jury and only came up with a verdict after given additional *Howard* instructions, well-known in the field as 'Hammer' instructions, for the reason that they are remedial in nature and because they produce results not because the jury suddenly has an 'epiphany' of understanding but because they have been dressed down by the judge and told they 'should' be able to come to a decision."  (Doc. #12 at p. 17).

Back at Jenkins' trial, after further deliberation the jury found Jenkins not guilty of one count of rape but guilty of two other counts of rape and one count of gross sexual imposition. (Doc. #5, Exh. 3).

The trial judge sentenced Jenkins to two terms of imprisonment each lasting seven years

for the rape convictions and a three-year term of imprisonment for the gross sexual imposition. (Doc. #5, Exh. 4 at p. 2).  The trial judge ordered him to serve these sentences concurrently, resulting in a total sentence of seven years imprisonment.  *Id*.

The trial judge also determined, under the factors set forth in Ohio Rev. Code §2950.09(B)(2)(a) through §2950.09(B)(2)(j), that Jenkins is not a sexual predator.  But the trial judge further determined, pursuant to Ohio Rev. Code §2950.09(E), "that the Defendant is a sexually oriented offender."  (Doc. #5, Exh. 4 at p.1).

### B. <u>Additional State Proceedings</u>

Over approximately the next two years, Jenkins unsuccessfully attempted to obtain relief from his convictions along three different avenues in the Ohio courts:

1. Jenkins initially filed a direct appeal in the Ohio Court of Appeals but not in the Ohio Supreme Court.

2. Jenkins later filed a Motion to Reopen Appeal under Ohio R. App. P. 26(B), which Ohio Court of Appeals granted thus reopening the appeal for further review on the merits.  The Court of Appeals ultimately rejected Jenkins' claims – which Jenkins' unsuccessfully sought to challenge in the Ohio Supreme Court.[2]

3. Jenkins filed a Petition under Ohio Rev. Code §2953.21.  This Petition proceeded through the trial court and the Ohio Court of Appeals.  But, Jenkins did not obtain review of his §2953.21 Petition in the Ohio Supreme Court, because he filed his Memorandum in Support of Jurisdiction one day late.

(Doc. #5, Exhs. 5-24).  A more detailed review of these various state proceedings will be conducted below.

_____

[2] Upon Jenkins' Rule 26(B) Motion to Reopen, the Ohio Court of Appeals reopened his appeal and assigned an attorney to represent Jenkins.  (Doc. #5, Exh. 10).  Upon later consideration of the parties' merits briefs, the Ohio Court of Appeals found no merit in Jenkins' claims.  *Id*., Exhs. 11-14.

To gain a better understanding of the events at trial, it is worth noting that the Ohio Court of Appeals explained (on Jenkins' initial direct appeal), "the outcome of Jenkins' trial turned on whether the jury chose to believe E.E., which it did."  (Doc. #5, Exh. 8 at p. 11).   In its final decision on Jenkins' reopened appeal, the Ohio Court of Appeals recognized that no physical evidence was presented during trial.  (Doc. #5, Exh. 14 at p. 3).  And, it explicitly rejected the State's contention that the evidence against Jenkins was overwhelming, instead finding:

> In our view, this was a close case.  Although there had been complaints of physical abuse at the hands of both parents, both complaining witnesses had denied, for months, to two different investigating officers, that there had been any sexual abuse by Jenkins.  It was only after they had been placed in the custody of their maternal grandmother [Sherry Weaver], who had taken a dislike to Jenkins, that the two stepdaughters made assertions of sexual abuse.  The older of the two was unable to complete her testimony on direct examination.  The record does not indicate the reason for this.  The younger stepdaughter [E.E.] did testify, and although her testimony was not inherently incredible, there were some aspects of her testimony that a reasonable jury might find difficult to credit.  For example, the complainant testified that Jenkins began playing a pornographic videotape for her just fifteen minutes before her mother was scheduled to get home from work, when she, her sister, and Jenkins had been alone together in the house for several hours before this.  As Jenkins notes, it seems unlikely that he would have begun playing a pornographic videotape so soon before his wife, the girls' mother, was due to return from work....

(Doc. #5, Exh. 14 at p. 8).

## III.    PROCEDURAL DEFAULT

Jenkins' federal habeas Petition raises nine Grounds for Relief.  Respondent contends that all but Jenkins' Fifth Ground for Relief are waived for purposes of federal habeas review due to his various procedural defaults in the Ohio courts.  Jenkins argues that he did not commit a procedural default and/or that "cause and prejudice" excuses any purported default.

The procedural issues are thus the starting point of the required analysis.

### A.     __Procedural Default and Waiver__

To obtain federal habeas review, Jenkins must show that he raised his federal constitutional claims in the Ohio courts as required by Ohio's procedural rules. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing in part *Coleman v. Thompson,* 501 U.S. 722, 749 (1991)); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994. If he did not – and if Ohio's procedural rules provided an adequate and independent basis for rejecting Jenkins' constitutional claims and if the Ohio courts actually enforced those rules against him – then his procedural default(s) may bar federal habeas review. *See Bonilla*, 370 F.3d at 497; *see also Buell*, 274 F.3d at 349.

If Jenkins committed a procedural default in the Ohio courts, then two limited situations excuse the default: (1) if he shows both "cause" for and "prejudice" from his default, *Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004)(and cases cited therein), or (2) if he demonstrates that a fundamental miscarriage of justice will result from the failure to consider the merits of the claims in this federal habeas case. *See Coleman* 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Monzo v. Edwards*, 281 F.3d 568, 575 (6th Cir. 2002).

### B.     __Jenkins' Claims of Ineffective Assistance of Counsel ("IAC")__

**1.**
**Jenkins' IAC-Based Grounds for Relief**

Jenkins's habeas Petition raised his IAC claims in the following Grounds for Relief:

I.     Trial counsel failed to properly investigate an impotency defense.

II.     Trial counsel failed to conduct adequate pre-trial investigation into the proper child witness interview protocols in order to present vital, material, and relevant information that was beyond the ken of the jury.

III.    Trial counsel failed to call as a witness for the defense Crissandra
        Howard, Jenkins' sister, whose personal knowledge of bias and motive to
        fabricate allegations against him by Sherry Weaver [E.E's grandmother]
        would have assisted the jury in deliberations concerning state witness
        testimony.

IV.     Trial counsel failed to allow Jenkins to offer his own testimony in support of his
        actual innocence.

V.      Trial counsel failed to object to the prosecution's misstatement during final
        closing argument, which misstatement altered the burden of proof.

VI.     Counsel appointed to represent Jenkins during his post-conviction [§2953.21]
        proceedings denied him the opportunity to testify at his post-conviction hearing
        contrary to his rights.

IX.     The trial court erred during the post-conviction Petition proceedings by
        preventing Jenkins from both offering testimony in support of his Petition and
        demonstrating his actual innocence.

(Doc. #1 at pp. 9-14, 16-18, 20-21).

## 2.
## Cause and Prejudice

Respondent acknowledges that Jenkins litigated his IAC claims during his §2953.21

proceedings in the lower Ohio courts. (Doc. #5 at p. 13). Respondent argues that Jenkins

committed a procedural default by failing to perfect a timely appeal in the Ohio Supreme Court.

*Id*. Thus, according to Respondent, Jenkins has waived his IAC claims. Although Respondent is

correct that Jenkins committed this procedural default, Jenkins has established both cause and

prejudice, and consequently, his IAC claims are not waived and a merits review is warranted.

Jenkins sent his Memorandum in Support of Jurisdiction to the Ohio Supreme Court by

submitting it to the London Correctional Institution's mailroom. Records attached to Jenkins'

Traverse indicate that this occurred on September 29, 2003. (Doc. #12, Exhs. 1.2, 3.1, 3.2). Yet,

Jenkins' Memorandum remained in the mailroom for many days before it was actually mailed to

7

the Ohio Supreme Court.  It thus arrived at the Ohio Supreme Court on October 7, 2003, one day

after the October 6, 2003 deadline for filing.  *Id*.; *see* Doc. #12 at p. 14.  Recognizing this

tardiness, a Deputy Clerk of the Ohio Supreme Court returned Jenkins' Memorandum to him

without filing it.  (Doc. #12, Exh. 2.2).

Jenkins acknowledges this "procedural defect."  (Doc. #12, at p. 15).  He contends that

both cause and prejudice excuse it:  cause, because the mailroom's delay constituted an objective

factor external to his defense that impeded his effort to timely file his Memorandum; prejudice,

because LCI personnel effectively precluded him from perfecting his appeal in the Ohio

Supreme Court.  These contentions are well taken.

"To establish cause a petitioner must present a substantial reason to excuse his procedural

default."  *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).  "'Cause' under the cause and prejudice

test must be something *external* to the petitioner, something that cannot fairly be attributed to

him; ... some objective factor external to the defense that impeded ... efforts to comply with the

State's procedural rule."  *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003)(internal brackets

removed; emphasis in original)(quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)); *see*

*Bonilla*, 370 F.3d at 498.

In general, a prison official's inaction that results in the denial of an application for leave

to appeal as untimely "presents an 'objective factor external to the defense that impeded ...

efforts to comply with the State's procedural rule.'"  *Maples*, 340 F.3d at 439 (internal brackets

removed)(quoting in part *Coleman*, 501 U.S. at 753).  Jenkins' Memorandum in Support of

Jurisdiction was such an application for leave to appeal.  *See* Rule II(A)(2), Ohio Supreme Court

Rules of Practice (requiring, in part, a Memorandum in Jurisdiction to perfect an appeal).

The Sixth Circuit Court of Appeals in *Maples* explained, "Where a pro se prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events..., the [prison mail box] rule is sufficient to excuse a procedural default based upon a late filing."  *Maples*, 340 F.3d at 439.

Like the petitioner in *Maples*, who timely attempted to file a petition five days before the deadline, *see id.*, Jenkins attempted to file his Memorandum in a timely manner by submitting it to the mailroom six days before the deadline.  In the normal course of events, there is no doubt the Memorandum would have arrived timely, if LCI mailroom personnel had mailed it when Jenkins first submitted it to them.  *See Maples*, 340 F.3d at 439.  The record contains no indication that Jenkins failed to follow prison mail procedures or somehow contributed to the delay in mailing.  Instead, LCI personnel explained to Jenkins in writing that the postage meter in the mailroom was not working thus causing a delay in the processing of his mail.  (Doc. #12, Exh. 3.1).[3]  For these reasons, Jenkins has established an objective factor external to his defense caused his procedural default.  *See Maples*, 340 F.3d at 439.

Jenkins has also established actual prejudice, because the delay and resulting procedural default led to the Ohio Supreme Court's refusal to consider his IAC claims.  This is the precise prejudice befalling the petitioner in *Maples*, 340 F.3d at 440 ("The prejudice resulting from the procedural default is that the Michigan Supreme Court refused to consider Maples's claim of ineffective assistance of counsel.").

Respondent does not contend that Jenkins committed a procedural default with regard to his IAC claim raised in his Fifth Ground for Relief, but instead argues the merits of this claim.

---

[3]  To their credit, a prison official also explained, "Actions have been taken so that this will not happen in the future."  (Doc. #12, Exh. 3.1).

*See* Doc. #5 at pp. 16-20.  Consequently, no procedural default issue exists as to the Fifth Ground for Relief.

Accordingly, although Jenkins' committed a procedural default with regard to his First, Second, Third, Fourth, Sixth, and Ninth Grounds for Relief, both cause and actual prejudice excuse his default.  Thus, for purposes of federal habeas review, Jenkins has not waived his First, Second, Third, Fourth, Sixth, and Ninth Grounds for Relief.  *See, e.g., Williams v. Anderson*, 460 F.3d 789, 799 (6th Cir. 2006).

### C.      Jenkins' Seventh Ground for Relief

Jenkins asserts in his Seventh Ground for Relief that during his direct appeal, his attorney provided ineffective assistance by failing "to advance more meritorious issues apparent from the record than those which were raised....."  (Doc. #1 at p. 18).  Jenkins maintains that the two "more meritorious issues" not raised by counsel were the same two issues identified by the Ohio Court of Appeals when it re-opened his direct appeal: First, trial counsel's failure to object to the prosecutor's egregious misstatement concerning the burden of proof during final closing argument; second, "the issue concerning the testimony by the State's expert witness which utilized mathematical probabilities to substantiate the failure to produce physical evidence by [Jenkins'] trial counsel."  *Id*. at p. 19.  Jenkins claims that his appellate attorney's failure to raise these issues violated his rights under the First, Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution.

Respondent contends that this claim is procedurally defaulted, because Jenkins never presented it to the Ohio courts.  This contention lacks merit.

In his Rule 26(B) Motion to Reopen Appeal, Jenkins – through new counsel – raised this

same claim of ineffective assistance of appellate counsel based on these same two issues.  (Doc. #5, Exh. 9 at pp. 4-8).  He further attempted to raise these issues in the Ohio Supreme Court.  *Id.*, Exh. 15 at pp. 3-14.  Because Jenkins fairly raised the substance of these claims in both the Ohio Court of Appeals and the Ohio Supreme Court, he did not commit a procedural default.  *See Whiting v. Burt*, 395 F.3d 602, 612-13 (6th Cir. 2005).

Respondent further contends that Jenkins has not attempted to show cause and prejudice for his failure to raise this claim in the Ohio courts.  However, because Jenkins fairly presented this claim to the Ohio courts during his Rule 26(B) proceedings, there is no need to address Respondent's cause and prejudice arguments.  *See Whiting*, 395 F.3d at 615 ("Because Petitioner exhausted his state remedies with respect to this claim, we may consider it on the merits.  Any discussion of the procedural default and waiver issues is therefore unnecessary and would be, at best, pure dictum.").

Accordingly, Jenkins did not procedurally default his Seventh Ground for Relief.

### D.  Dr. Hicks' "15%" Testimony

In his Eighth Ground for Relief, Jenkins challenges the admission of the physician/expert's 15% testimony as follows:

> Petitioner's conviction is contrary to law and must be reversed based on the trial court's failure to grant a mistrial upon the introduction of unsubstantiated mathematical probabilities that were introduced by the State to discount the State's failure to [produce] sufficient evidence to support conviction, violating [P]etitioner's First, Fifth, Sixth, Ninth, and Fourteenth Amendment rights to the United States Constitution.

(Doc. #1 at p. 20).  Jenkins explains in support:

> During direct examination by the State, Dr. Ralph Hicks, the attending pediatrician who examined both P.G. and E.E. gave ... testimony concerning the

11

frequency with which claims of sexual abuse of children are [corroborated] by physical evidence.  Dr. Hicks proferred that medical literature he was familiar with offered that 15% of those cases in which children are alleged to be sexually abused only have indications that sexual abuse occurred.  Trial counsel objected to the State's solicitation of that evidence, which the trial court overruled, stating Dr. Hicks was testifying in general terms and not as to specifics.  Dr. Hicks went on to state what he was testifying to was in published medical literature, but never proferred any type of documentation to support his statistics.

*Id*.

Respondent contends that Jenkins procedurally defaulted this claim by failing to present it to the Ohio courts as a federal constitutional claim.  Respondent acknowledges that this claim was "*labeled* as a constitutional claim before the Ohio court of appeals...."  (Doc. #5 at p. 15 (Respondent's italics)).  Respondent maintains, however, that this claim "was *argued* as purely a state law claim (see Ex. 14 at pp.12-14), and the court of appeals decided it based solely on state law (see Ex. 14 at pp. 12-13).  Accordingly, this claim is procedurally defaulted and should be dismissed."  (Doc. #5 at p. 15)(Respondent's italics and internal citations).

Respondent's contentions lack merit.  The United States Supreme Court has described the ease with which federal constitutional claims can be fairly presented to state appellate courts as follows:

A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'

*Baldwin v. Reese,* 541 U.S. 27, 32 (2004); *see Stuart v. Wilson*, 442 F.3d 506, 514 (6th Cir. 2006).  Jenkins has met this standard.  Respondent acknowledges that in his reopened appeal Jenkins labeled his challenge to the admission of the expert's 15% testimony as a constitutional claim.  (Doc. #5 at p.15).  Respondent also recognizes that Jenkins asserted this claim under the

Fifth and Fourteenth Amendments.  *Id*. at p. 15.  A review of Jenkins' appellate briefs confirms the federal constitutional label Jenkins placed on this claim.  *See* Doc. #5, Exh. 11 at pp. ii, 12; Exh. 15 at pp. I, 12.

Respondent incorrectly reports that Jenkins argued this claim purely as a state law claim. This was incorrect because Jenkins argued this claim as a violation of both state and federal law. *See, e.g.*, Doc. #5, Exh. 11 at p. 12 ("The trial court erred in allowing an expert witness to offer unsubstantiated mathematical probabilities ... in violation of Evid. R. 703 and the Fifth and Fourteenth Amendments to the United States Constitution.....") and p. 14 ("By using unsubstantiated statistics to explain away the jury's doubts, the State violated Mr. Jenkins' right to Due Process of Law.").

Because Jenkins raised this claim in both the Ohio Court of Appeals and the Ohio Supreme Court as a violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution, he fairly presented this to the Ohio courts as a federal constitutional claim.  *See id*.; *cf. Stuart*, 442 F.3d at 514 ("In his appeals..., Petitioner stated that his claim as to the admission of the hearsay statements was based in part on the United States Constitution, so that he in fact fairly presented the claim to the state courts.").

Accordingly, Jenkins did not commit a procedural default with regard to his Eighth Ground for Relief, and it is therefore not waived for purposes of federal habeas review.

### E.  <u>Summary</u>

For the reasons set forth above, Jenkins did not waive his IAC claims for purposes of federal habeas review.  The remaining analysis of his habeas Petition thus turns on the main issue of whether his claims have merit entitling him to federal habeas relief.

13

## IV.    FEDERAL HABEAS CORPUS AND THE AEDPA[4]

In 1867 Congress extended to the federal courts the power to grant a Writ of Habeas Corpus when a person "is in custody in violation of the Constitution or laws or treaties of the United States...."  28 U.S.C. §2241(c)(3); *see Williams v. Taylor*, 529 U.S. 362, 374 (2000).

In 1996 Congress enacted the AEDPA "dramatically alter[ing] the landscape for federal habeas corpus petitions." *Rhines v. Weber*, 544 U.S. 269, 274 (2005).  "AEDPA 'requires heightened respect for state court factual and legal determinations.'" *Fulcher v. Motley*, 444 F.3d 791, 824 (6th Cir. 2006)(citation omitted).

Under the AEDPA, 28 U.S.C. §2254(d), "a petitioner is not entitled to relief in a federal habeas corpus proceeding unless the state court's adjudication of his or her ... claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Arnett v. Jackson*, 393 F.3d 681, 685 (6th Cir. 2005).

The AEDPA thus creates two categories of potential relief for federal habeas petitioners – a "contrary to" category and an "unreasonable application" category.  *See Millender v. Adams*, 376 F.3d 520, 523 (6th Cir. 2004).  Under the "contrary to" category, a petitioner "must show that the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or that the state court decided a case differently than the Supreme Court has on a

---

[4]  The "AEDPA" is the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) (relevant portions codified, as amended, 28 U.S.C. § 2254).  Because Jenkins filed his federal habeas petition after April 24, 1996, the date the AEDPA became effective, federal habeas review of his Petition is governed by the AEDPA.  *See Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006).

14

set of materially indistinguishable facts." *Millender*, 376 F.3d at 523.

> Under the second category, involving the unreasonable application of federal law by a state court, a federal habeas court must ask whether the state court's application of clearly established federal law was objectively reasonable. If the federal court finds that, viewed objectively, the state court has correctly identified the governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case, it may grant the writ.

*Id.* (citation omitted).

An objectively unreasonable application of clearly established federal law is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see Arnett*, 393 F.3d at 685. "[T]o be found an 'unreasonable application of ... clearly established Federal law,' the state-court decision must be 'objectively unreasonable' and not simply erroneous or incorrect." *Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007) (quoting in part *Williams*, 529 U.S. at 409-11). "Moreover, a federal court making the unreasonable application inquiry should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. Rather, the issue is whether the state court's application of clearly established federal law is objectively unreasonable." *Miller v. Webb*, 385 F.3d 666, 671-72 (6th Cir. 2004)(citations and internal punctuation omitted).

In light of these AEDPA standards, the Supreme Court has instructed federal habeas courts to avoid first setting forth the correct AEDPA standards but then overlooking these standards by conducting a *de novo* review of a state-court decision. *See Price v. Vincent*, 538 U.S. 634, 639 (2003); *see Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003).

## V.  JENKINS' IAC CLAIMS

### A.  *Strickland v. Washington* **and the AEDPA**

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court held that to establish a Fourteenth Amendment violation due to ineffective assistance of trial counsel, a criminal defendant must make two showings:  (1) deficient performance by trial counsel; and (2) prejudice to the defendant caused by the deficient performance.  466 U.S at 687-88; *see Riley v. Berghuis*, 481 F.3d 315, 321 (6th Cir. 2007).

To establish deficient performance, "the defendant must show that his 'counsel's representation fell below an objective standard of reasonableness' as embodied in 'prevailing professional norms.'"  *Riley*, 481 F.3d at 321 (quoting in part *Strickland*, 466 U.S. at 687-88). As to prejudice, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different....  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Riley*, 481 F.3d at 321 (quoting *Strickland*, 466 U.S. at 694).

"The Supreme Court has made clear that post-AEDPA claims of ineffective assistance of counsel brought by habeas petitioners will succeed only in very limited circumstances....  For [a petitioner] to succeed..., he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly.  Rather, he must show that the ... [state] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Payne v. Bell*, 418 F.3d 644, 665 (6th Cir. 2005).

When reviewing Jenkins' challenges to his convictions, the Ohio Court of Appeals correctly set forth *Strickland's* "deficient performance" and "prejudice" standards.  *See* Doc. #5,

Exhs. 10, 14, 24. Its decisions were thus not "contrary to" *Strickland*, and habeas relief is unavailable to Jenkins under this aspect of 28 U.S.C. §2254(d)(1). *See Bell v. Cone,* 535 U.S. 698; *see also Williams,* 529 U.S. at 405 (a decision is "contrary to ... clearly established Federal law" if it is "diametrically different, opposite in character or nature, or mutually opposed." ).

Resolution of Jenkins' IAC claims therefore focuses on whether the Ohio Court of Appeals' rejection of these claims constituted an unreasonable application of *Strickland*.

### B. Trial Counsel's Failure to Object to the Prosecutor's Misstatement – An Issue of Prejudice

### 1. The Ohio Court of Appeals' Decisions

Jenkins bases his Fifth Ground for Relief on his trial counsel's failure to object to the prosecutor's egregious misstatement during final closing argument, the required AEDPA analysis of this claim begins with the Ohio Court of Appeals' merit-based decisions during Jenkins reopened appeal. (Doc. #5, Exhs. 10, 14).

The Ohio Court of Appeals began by identifying the following statement by the prosecutor during his final closing argument:

> So, [Jenkins' trial attorney] says, hey, you gotta believe [E.E.] beyond a reasonable doubt and that's true. Your job is not to look for doubt. It's not to give him the benefit of the doubt. Your job is to determine what the truth is. That's what your job is.

(Doc. #5, Exh. 10 at p. 1)(brackets altered). The Ohio Court of Appeals found this "an egregious misstatement of the burden of proof in a criminal case," *id*., explaining:

> It **is** the duty of the jury to give a criminal defendant the benefit of reasonable doubt. As Jenkins notes in his motion to re-open, the jury was originally deadlocked, only coming to a verdict after additional instructions were given in accordance with **State v. Howard** (1989), 42 Ohio St. 3d 18.

17

Furthermore, the jury found Jenkins not guilty on one of the counts.

> We agree with Jenkins that his trial counsel should have objected to this misstatement by the prosecutor, and should have requested a specific curative instruction....

*Id*. at pp. 1-2 (emphasis in original).  At this point in Jenkins' reopened appeal, the Ohio Court of Appeals specifically declined to reverse Jenkins' convictions, instead leaving this issue of ineffective assistance of trial counsel "an open question."  *Id*. at p. 2.

Later, after appointing new counsel to represent Jenkins and after accepting additional briefing, the Ohio Court of Appeals concluded that the failure to object to the prosecutor's misstatement caused no prejudice to Jenkins.  The Court of Appeals explained:

> Even though this case, in our view, was a close case, we conclude that trial counsel's failure to have objected to the prosecutor's misstatement of the jury's allegations [sic, presumably "obligations"] with reasonable doubt did not so undermine the proper functioning of the adversarial process that the trial in this case cannot be relied upon as having produced a just result.  We base this conclusion upon the repeated references by defense counsel and the trial court to the burden of proof beyond a reasonable doubt.  Having reviewed the transcript of this trial, we can understand why the jury had difficulty with this case.  Based upon defense counsel's statements concerning the burden of proof beyond a reasonable doubt, and, more importantly, the trial court's instructions to the jury, we are convinced that the jury understood its obligation to give Jenkins the benefit of reasonable doubt, notwithstanding the prosecutor's misstatement in that regard.  Accordingly, although we agree with Jenkins that his trial counsel's performance fell below an objective standard of reasonableness, we are not persuaded that prejudice resulted therefrom.

(Doc. #5, Exh. 14 at p.9).

## 2.
## Analysis

Jenkins points out that the prosecutor's misstatement occurred in his final closing arguments, after Jenkins' trial attorney had presented his closing argument.  Consequently, according to Jenkins, the prosecutor's misstatements could not have been, and were not, undone

18

by Jenkins counsel's earlier closing arguments.

Jenkins also argues that the trial court's instructions "never emphasized that petitioner WAS to be given the benefit of the doubt, and that the prosecutor misspoke in his closing arguments which would have altered the jury's understanding as to the petitioner's right to be considered innocent prior to finding that the prosecution met its burden to prove every essential element of the offenses charged."  (Doc. #1 at p. 15)(emphasis in original).

Respondent argues that in light of the Ohio Court of Appeals' explanation, it did not unreasonably apply any clearly established Supreme Court law when finding no prejudice to Jenkins.  (Doc. #5 at p. 20).

The problem with Jenkins' challenges to the Ohio Court of Appeals' decisions is that he essentially asks this Court to conduct a *de novo* review, which would be contrary to the AEDPA. *See Price*, 538 U.S. at 639; *see also Bell,* 535 U.S. 698-99.  Caution must be exercised not to ask the *de novo* review question – whether the Ohio Court of Appeals correctly applied *Strickland*'s prejudice standard – but to instead ask the AEDPA-mandated question – whether the Ohio Court of Appeals' decision involved an objectively reasonable application of *Strickland*'s prejudice standard.  The answer to the AEDPA-mandated question is "yes," because the Ohio Court of Appeals reviewed pertinent parts of the trial record and carefully considered Jenkins' IAC claim in a reasoned analysis of considerations permitted by *Strickland*.  The AEDPA mandates deference to such decisions, and therefore, Jenkins is not entitled to habeas relief on this IAC claim.

When considering whether trial counsel's performance caused prejudice to a defendant, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding

19

whose result is being challenged." *Strickland*, 466 U.S. at 696. "In this vein, the court must determine whether 'the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.' *Id*.; *see also Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir.2002) (explaining that, when analyzing ... prejudice[ ]..., 'it is necessary to determine if the proceeding was fundamentally unfair or unreliable; a court should not focus the analysis on the outcome')." *Higgins v. Renico*, 470 F.3d 624, 633-34 (6th Cir. 2006)(remaining citation omitted). This was precisely the Ohio Court of Appeals' approach. *See* Doc. #5, Exh. 14 at pp. 3-9.

The Ohio Court of Appeals' analysis ultimately focused on whether trial counsel's failure to object to the prosecutor's misstatement undermined the fundamental fairness of the Jenkins' trial – as required by *Strickland*. (Doc. #14, Exh. 5 at pp. 8-9). Its analysis included the realization that Jenkins' trial presented a "close case." *Id*. To support this, the Court of Appeals reviewed some of the weaknesses in E.E.'s testimony, along with other evidence favorable to Jenkins' defense – notably, in part, evidence indicating that E.E denied to authorities that Jenkins had sexually abused her until she moved in with her grandmother, who disliked Jenkins. *Id*. at p. 8. In this manner, the Ohio Court of Appeals "prejudice" analysis was objectively reasonable due to *Strickland*'s emphasis on the need to consider the strength or weakness of the evidence against a defendant when evaluating prejudice. "Whether an error actually prejudiced a defendant is weighed against the 'totality of the evidence before the judge or jury." *Higgins*, 470 F.3d at 634 (quoting in part *Strickland,* 466 U.S. at 695). Indeed, "[a] verdict only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."' *Higgins*, 470 F.3d at 634 (*Strickland,* 466 U.S. at 696).

Whether or not the evidence against Jenkins is now considered to be weak,[5] the Ohio Court of Appeals appreciated the significance of the "close case" presented during Jenkins' trial.  Its prejudice analysis was thus fully informed, especially in its understanding that "although [E.E.'s] testimony was not inherently incredible, there were some aspects of her testimony that a reasonable jury might find difficult to credit."  (Doc. #5, Exh. 14 at p. 8).

Yet, the Ohio Court of Appeals' prejudice analysis did not end there; it considered the opposite – events and statements during Jenkins' trial that effectively negated his counsel's failure to object to the prosecutor's misstatement.   In doing so, the Ohio Court of Appeals based its no-prejudice holding on both Jenkins' trial attorney and the trial judge's repeated references to the prosecution's burden to prove guilt beyond a reasonable doubt.  *See* Doc. #5, Exh. 14 at p.9.  The Court of Appeals noted that during his closing argument, Jenkins' trial counsel "stressed the burden of proof beyond reasonable doubt."  *Id*. at p. 4.  The Court then recognized that Jenkins' counsel asserted the following:

> You have to believe that her [E.E.'s] testimony was believable beyond a reasonable doubt.  It has to remove all reasonable doubt from your head before you can rely solely upon that.  If there's still doubt, reasonable doubt, after considering her testimony then your verdict must be not guilty.  So keep that in mind.  Keep that in mind.

*Id*.  The Ohio Court of Appeals next quoted at some length from the prosecutor's final closing argument, including his misstatement of the burden of proof.  *Id*. at pp. 4-5.

The Court of Appeals continued in chronological order by repeatedly quoting the trial judge's jury instructions.  These quotations revealed that the trial judge first stated the

---

[5] The Ohio Court of Appeals, as noted above, recognized that the evidence against Jenkins was not overwhelming. (Doc. #5, Exh. 14 at p. 8).  While this certainly was so, it is also questionable whether the evidence against him can be considered truly "weak," because if E.E.'s testimony is credited, there is little doubt about his guilt.  *See* Trial Tr. at pp. 57-174.

presumption of innocence; he then explained that "a defendant must be acquitted of a particular offense unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of that offense...," *id*. at p. 6; he then explained the meaning of the phrase "beyond a reasonable doubt," *id*., he then specified, "If you find the State proved beyond a reasonable doubt all the essential elements of any one or more of the separate counts of Rape as charged in the indictment, then your verdict must be guilty as to such offense or offenses, according to your findings," *id*. at pp. 6-7; an acquittal instruction followed – "If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of any one or more of the separate counts of Rape as charged in the indictment, then your verdict must be not guilty as to such offense or offenses, according to your findings," *id*. at p. 7; a similar instruction regarding the gross sexual misconduct charge came next, *id*.; and, lastly, the trial judge explained the verdict forms to the jury, again stating the reasonable doubt standard as well as explaining the need for unanimous verdicts, *id*.  Later, after the jury was unable to reach a verdict on three charges, the trial judge provided the *State v. Howard* instruction, again reminding the jury of the reasonable doubt standard.  *See supra*, II(A).

In light of the Ohio Court of Appeals' thorough recitation of these events, along with its consideration of the "close case" at trial – particularly, its description and consideration of the evidence favorable to Jenkins' defense, including the possibility that some aspects of E.E.'s testimony could have been difficult to credit – the Ohio Court of Appeals reached a conclusion that was not an objectively unreasonable application of *Strickland*.

Accordingly, the AEDPA precludes federal habeas relief under Jenkins' Fifth Ground for Relief.

**C.    Trial Counsel's Failure To Investigate**
**      <u>Child Interview Protocols – An Issue of "Performance"</u>**

Jenkins contends in his Second Ground for Relief that his trial counsel provided ineffective assistance by not knowing the protocols for interviewing child abuse victims, by not presenting the jury with expert testimony about these protocols, and by not presenting expert testimony attacking the police interviews of E.E.  Jenkins emphasizes that those interviews completely failed to employ the correct interview protocols, and as a result, the failure to use an expert witness missed a key method of discrediting E.E.'s trial testimony.  Jenkins further maintains that defense counsel failed to make any inquiry into the area of psychology so as to even form an opinion as to whether or not any doors to unfavorable evidence even existed, much less doors that should not be opened.  (Doc. #12 at p. 29).

**1.**
**<u>Jenkins' §2953.21 Petition and Evidentiary Hearing</u>**

Jenkins began litigating this IAC claim by raising it in a §2953.21 Petition in the Miami County Court of Common Pleas (hereafter, the "trial court"), where two attorneys from the Ohio Public Defender's Office represented him.  The trial court held an evidentiary hearing during which three witnesses testified.

Jenkins' trial attorney testified about his preparation for the criminal trial and his representation of Jenkins during the criminal trial, including his trial strategy.  (Doc. #12, Exh. 5 at pp. 8-39).

Jolie Brams, Ph.D., a clinical psychologist and forensic psychology expert – who had not testified during Jenkins' criminal trial – testified in general terms about the professionally established techniques and protocols for interviewing children in potential abuse cases.  Dr.

23

Brams explained, in general, that these protocols are designed to insure the accuracy of a child

witness's report of abuse.  (Doc. #12, Exh. 5 at pp. 39-73).

 As to the specifics of Jenkins' case, Dr. Brams opined that the detective who interviewed

E.E. failed to employ the interview techniques and did not follow the interview protocols.  Dr.

Brams explained her opinion in part as follows:

> The other problem is that Mr. [Detective] Brown and I ... don't think this
> was ill-intention on his part, it was just inexperience on his part in that almost
> every question that he asked was a leading question.  Um, he supplied information
> to [E.E.].  She supplied a little but he supplied information that she had not
> initially stated and because he didn't use a narrative ... style..., it is impossible to
> discern how much of what she said is from her own experience and memory and
> how much is from Detective Brown's leading questions.

(Doc. #12, Exh. 5 at p. 55).

 Dr. Brams further testified that Detective Brown interviewed P.G. before E.E.  *Id*. at p.

56.  When interviewing E.E., Detective Brown "stated, you know, your sister already told us

about this and basically asked her to confirm that...."  *Id*.  According to Dr. Brams, this is

"confirmatory bias."  *Id*.  She explained:

> One of the things we've seen, especially with all pre-school cases ... and
> all of those cases is that the investigators would say, you know, we've already
> heard this from one person so just to confirm it and it puts the child, especially a
> vulnerable child like [E.E.], in a very difficult position because she loves her
> sister.  She's probably closer to her sister than anyone else in her life so if she
> states that what [P.G.] says is wrong, she's a liar.  You know, if she confirms it
> she may be telling the truth, she not, but it's a pressure on her, it's not her own
> separate idea.  It's okay.  Confirm this which puts a further bind on that child.

*Id*. at pp. 56-57.

 Dr. Brams also opined that the length of E.E.'s interview (approximately fifteen to

twenty minutes) was too brief.[6]  *Id*. at p. 59.  Dr. Brams explained, in part, "I think the primary point here is that I don't know any evaluator, especially a trained, experienced evaluator who could ever conduct an [sic] forensic interview of child sexual abuse in fifteen or twenty minutes. It just can't be done.  It takes three times as long as that to develop, over the course of maybe two interviews, to develop a relationship, to talk about interview ... resistance, to find out background information...."  *Id*. at p. 59.

The final witness who testified during the trial court's hearing was Jenkins' sister, Crissandra Howard.  According to Howard, if defense counsel had asked her for money to retain an expert before Jenkins' criminal trial, she would have been able to provide it.  *Id*.  at p. 78.

At the conclusion of the hearing, Jenkins, himself, spoke up.  He stated that he "move[d] to address the court."  *Id* at p. 80.  The judge responded, "Well you better talk to your attorneys first ... because they're representing you.  Defendants don't have the right to just speak to the Judge.  We go through attorneys because they're the professionals."  *Id*.  After a recess, one of Jenkins' attorneys stated that she had completed her presentation.  *Id*. at p. 81.

The judge later issued a written decision rejecting Jenkins' claims of ineffective assistance of trial counsel.  (Doc. #12, Exh. 20 at pp. 5-6).

**2.**
**The Ohio Court of Appeals' Decision**

Upon Jenkins' timely *pro se* appeal, the Ohio Court of Appeals affirmed the trial court's rejection of Jenkins' IAC claims.  (Doc. #12, Exh. 24).

The Ohio Court of Appeals determined that Dr. Brams testimony about the detective's

---

[6]  According to Jenkins' Brief in support of his §2953.21 Petition, "Detective Brown claims he interviewed [E.E.] for two hours regarding the allegations."  (Doc. #5, Exh.19 at p. 32)

failures to follow protocols for interviewing victims of child abuse would have been admissible at trial to assist the jury in assessing E.E.'s credibility. *Id*. at p. 6. The Court then explained:

> Indeed, ... the Ohio Supreme Court [has] held that 'a defendant in a child sexual abuse case *may* present testimony as to the proper protocol for interviewing child victims regarding their abuse.' (emphasis added). It does not follow, however that an attorney necessarily provides ineffective assistance if he fails to utilize such an expert. To the contrary, the Ohio Supreme Court has recognized that whether to call an expert is a matter of trial strategy, and 'the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel....'

> In the present case, defense counsel, a public defender with fifteen years of experience, did precisely that – he relied on cross-examination of the detective who interviewed the complaining witness rather than calling an expert witness to critique tapes of those interviews and to testify about defects in the interview process....

(Doc. #5, Exh. 24 at p.6)(citations omitted).

The Court of Appeals explained the reasons provided by defense counsel to support his strategy of not calling this type of expert witness. *Id*. at pp. 6-7. These reasons, according to the Ohio Court of Appeals, supported the conclusion that defense counsel's decision did not fall below an objective standard of reasonableness. The Court found the decision to be "an informed one," *id*. at p. 7, and noted that this type of decision – not to call an expert witness – is generally "a matter of trial strategy." *Id*. The Court of Appeals also recognized that the prosecution did not call such an expert, but might have if defense counsel had done so. In this situation, "If the jury ultimately found the State's expert to be more credible, then Jenkins' defense would have been harmed. In light of that danger, we cannot say defense counsel provided deficient representation by foregoing a potential battle of experts." *Id*. at pp. 7-8.

As to the videotapes of the police interviews of E.E., the Court of Appeals reasoned:

> We also note that if defense counsel had called an expert to testify about

26

the taped interviews, the State very well may have sought to introduce the tapes into evidence....  [T]he trial court recognized that at least one of the videotapes was potentially damaging to the defense, insofar as the victim 'volunteered a number of specifics about the crimes without prompting by the detective,' 'corrected the detective on several matters, very authoritatively,' and 'presented herself as an emotional, angry, and sympathetic figure.'  In the trial court's opinion, 'competent defense counsel would *not* want the jury to view the tape.'... In order to minimize that danger, competent defense counsel might forego having an expert evaluate the tape and testify at trial.  In short, we simply cannot say that defense counsel's reliance on cross examination rather than consulting and calling an expert witness was outside the range of acceptably sound trial strategy....

*Id*. at p. 8 (internal record citations omitted).

### 3.
### Analysis

The Ohio Court of Appeals' rejection of this IAC claim was not an objectively unreasonable application of *Strickland*.

"'Because advocacy is an art not a science..., [counsel's] strategic choices must be respected,' if they were 'made after a thorough investigation of law and facts relevant to plausible options.' ... Such choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference.  Indeed, such strategic choices are virtually unchallengeable."  *Higgins*, 470 F.3d at 632 (quoting in part *Strickland*, 466 U.S. at 681, 690).  *Strickland* thus mandates, "Judicial scrutiny of counsel's performance must be highly deferential.'  466 U.S. at 689.  "[A] court must engage in the strong presumption that counsel's conduct fall within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  When trial counsel's acts or omissions constituted sound trial strategy, his or her performance was not constitutionally deficient...."  *Id*., *see Higgins*, 470 at 632.

The Ohio Court of Appeals did not unreasonably apply *Strickland*'s deficient-performance standard when it identified as strategy defense counsel's decisions to rely on cross-examination of the detective, rather than calling an expert to challenge the detective's interview techniques.  Regardless of whether counsel's decision constituted correct or sound trial strategy, it was at its core a strategic decision.  In this vein, the Ohio Court of Appeals carefully considered what could have happened if counsel had called an expert witness to discredit the detective (and/or E.E.).  These possible negative outcomes to Jenkins' case at trial counseled against calling an expert witness, as the Ohio Court of Appeals recognized.  Given this, along with the Ohio Court of Appeals' detailed explanation of why defense counsel's performance was not deficient, the Ohio Court of Appeals' rejection of this IAC was not objectively unreasonable.

Accordingly, the AEDPA precludes federal habeas relief on Jenkins' Second Ground for Relief.

### D.       Impotency and Actual Innocense

Jenkins' First Ground for Relief claims that his trial counsel provided constitutionally ineffective assistance by failing to properly investigate an impotency defense.  Jenkins contends that despite his requests, counsel failed to contact his physician, Dr. Stone.  According to Jenkins, Dr. Stone intended "to offer testimony in support of [Jenkins'] inability to manifest an erection; to support an impotency defense which would have demonstrated that [he] was unable to physically and emotionally engage in the activity, that was being alleged by the minor children."  (Doc. #1 at p. 10).

Jenkins' Fourth Ground for Relief claims that his trial counsel provided ineffective assistance by preventing him from testifying on his own behalf about his impotency and thus

about his actual innocense.  (Doc. #1 at pp. 13-14).

These IAC claims arose in the Ohio courts as part of Jenkins' attempt to show that his

counsel in the §2953.21 proceedings held a conflict of interest.  The Ohio Court of Appeals

rejected these IAC claims as follows:

> [W]e find no prejudice to Jenkins as a result of the alleged conflict at
> issue.  Even if Dr. Stone and Jenkins had testified that he suffered from erectile
> dysfunction, we are unpersuaded that post-conviction relief would have been
> warranted.  Jenkins sought to introduce this testimony to show that trial counsel
> was ineffective in failing to pursue an impotence defense to the two penile-
> vaginal rape charges against him.  Prior to trial, the State filed a bill of particulars
> indicating that the first of these offenses occurred 'on or about September, 1998
> through June 26, 1999,' and second occurred on or about June 26, 1999 through
> December, 1999....
>
> The post-conviction record contains a note from Dr. Stone concerning his
> treatment of Jenkins for impotence.  In relevant part, it states: 'This gentleman
> has low testosterone.  Without supplements he is tired, emotional, profoundly
> fatigued, + has NO libido.  Last testosterone injection was 8/10/99 + it lasts for 4-
> 6 weeks.  After it wears off he has <u>no</u> desire for sex and is completely unable to
> achieve an erection.'...  This note appears to comprise the basis of Jenkins'
> impotence defense.
>
> Upon review, however, we conclude that Dr. Stone's note does little to
> support Jenkins' defense.  The note indicates that without testosterone injections,
> Jenkins has no desire for sex and cannot achieve an erection.  It also indicates,
> however, that Jenkins had an injection on August 10, 1999, and that the effects of
> the injection could have lasted until near the end of September, 1999.  The first
> vaginal rape allegedly occurred before September, 1999 and the second occurred
> 'on or about June 26, 1999 through December, 1999.'...  With regard to the first
> rape, Dr. Stone's note plainly would have done nothing to establish an impotence
> defense.  With regard to the second rape, the note likewise would have done
> nothing to preclude the possibility that Jenkins committed the offense between
> late June and late September, 1999, a time frame that is consistent with the
> allegations in the bill of particulars.  Finally, we observe that Dr. Stone's note
> concerning erectile dysfunction would have had no impact on the other sexual
> abuse charges against Jenkins, as they did not involve the use of his penis.  In
> light of the foregoing facts, competent trial counsel may have reasonably elected
> not to call Dr. Stone as a witness and not to call Jenkins to testify about his
> erectile dysfunction.  Therefore, even if post-conviction counsel refused to
> present such evidence, we find no prejudice to Jenkins....

(Doc. #5, Exh. 24 at pp. 11-12).

Jenkins has not shown that this decision constituted an unreasonable application of *Strickland*'s deficient performance and prejudice standards. Although he argues that defense counsel failed to even talk to Dr. Stone prior to trial, *see* Doc. #12 at pp. 28-29, this failure does not conflict with the Ohio Court of Appeals' reasons for finding no deficient performance by counsel. Because the time frames set by Dr. Stone left open the possibility that Jenkins did not suffer from impotence during the times of the alleged rapes, defense counsel's decisions not to investigate Dr. Stone's information or present his testimony at trial excluded at least some non-exonerating evidence from trial. This was well within the bounds of representation by competent defense counsel, and therefore his decisions to omit this evidence from his case at trial did not fall below an objective standard of reasonableness. Similarly, because at least part of Dr. Stone's testimony would not have been favorable to Jenkins' defense, its omission from trial worked no prejudice to Jenkins. Because the Ohio Court of Appeals' decision effectively recognized these points, it was not objectively unreasonable.

As to the omission of Jenkins' own testimony, defense counsel testified during the §2953.21 evidentiary hearing that he excluded this because he did not think Jenkins would "do well" under cross examination. (Doc. #12, Exh. 5 at pp. 29-30). Defense counsel also stated that he did not think Jenkins would be a credible witness. *Id*. at p. 30. These strategic-centered reasons place defense counsel's decision to not present Jenkins' testimony during trial within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. Even if Jenkins could show that the failure to permit him to testify constituted an erroneous trial strategy, it was a reasonable strategy nonetheless particularly in light of the nature of this case along with counsel's opinion about

30

Jenkins' lack of credibility. Indeed, the mere possibility of conviction would have been magnified into near certitude if Jenkins had testified without credibility. Counsel's strategic decision prevented this from occurring, and thus provides no basis for concluding that defense counsel's performance at trial was constitutionally deficient. *See id.*

Accordingly, the AEDPA precludes federal habeas relief based on Jenkins' First and Fourth Grounds for Relief.

### E.    Failure To Call Jenkins' Sister As A Trial Witness

Jenkins contends in his Third Ground for Relief that his trial counsel provided constitutionally ineffective assistance by failing to call his sister, Crissandra Howard, to testify about her personal knowledge of E.E.'s grandmother, Sherry Weaver's bias and motive to fabricate. (Doc. #1 at pp. 11-12).

The procedural history of this claim is hazy. Respondent states that Jenkins raised this claim in the trial court and/or the Ohio Court of Appeals during the §2953.21 proceedings. (Doc. #5 at p. 11). This was the only basis Respondent asserted for procedural default of this claim. *See id.* Yet, a review of Jenkins' briefs in the §2953.21 proceedings does not reveal that he raised an IAC claim based on trial counsel's failure to call Crissandra Howard to counter Sherry Weaver's testimony. *See* Doc. #5, Exhs. 17, 19, 21, 23, 24.

Regardless of whether Jenkins fairly presented this particular IAC claim to the Ohio courts, it plainly lacks merit. Jenkins does not point to any evidence presented in either this federal case or during the state proceedings tending to support his allegation that Howard knew about, or would testify about, Sherry Weaver's purported bias. *See* Doc. #1 at pp. 11-12; *see also* Doc. #12. Although Howard testified during the §2953.21 evidentiary hearing, she did not discuss Sherry

31

Weaver or her purported bias.  Howard only testified briefly about her communications with trial counsel concerning her ability and willingness to pay for an expert to testify at Jenkins' trial concerning protocols for interviewing child sexual abuse victims.  *See* Doc. #12, Exh. 5 at pp. 73-79. Absent some evidence supporting Jenkins' allegations about Howard's knowledge of bias, Jenkins has not shown that defense counsel's failure to call Howard as a trial witness constituted both deficient performance and prejudice to him as required by *Strickland*.

Accordingly, although Jenkins' Third Ground for Relief is likely waived due to his failure to fairly present it to the Ohio courts, this IAC claim also fails on the merits to provide a basis for federal habeas relief.

### F.  IAC Claims Related To The §2953.21 Proceedings

Jenkins' Sixth Ground for Relief claims that his appointed counsel during the §2953.21 proceedings provided constitutionally ineffective assistance by denying him the opportunity to testify during the evidentiary hearing; by failing to subpoena his physician, Dr. Stone, whose testimony would have supported an impotency defense and, hence, his actual innocense; and by failing to raise numerous issues Jenkins asked counsel to raise.  *See* Doc. #1 at pp. 16-17.

It is well-established that "errors in [state] post-conviction proceedings are outside the scope of federal habeas corpus review."  *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton,* 794 F.2d 245, 246-47 (6th Cir. 1986); *Roe v. Baker,* 316 F.3d 557, 571 (6th Cir. 2002)). This principle encompasses the Sixth and Fourteenth Amendments right to counsel, and likewise, the right to be free from ineffective assistance of counsel during state post-conviction proceedings. *See Cress*, 484 F.3d at 853 (and cases cited therein).  "States have no obligation to provide this avenue of relief..., and when they do, the fundamental fairness mandated by the Due Process Clause

does not require that the State supply a lawyer as well." *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)(citation omitted); *see Cress*, 484 F.3d at 853 (and cases cited therein).

In addition, Jenkins effectively agreed to these principles in his *pro se* state appeal of the §2953.21 proceedings by stating "that he is not entitled to effective assistance of counsel at a post-conviction hearing...." (Doc. #5, Exh. 21 at p. 20). He then inconsistently argued that his §2953.21 counsel's representation violated his right to due process. *See id*. As explained above, this contention lacked merit. *See Cress*, 484 F.3d at 853 (and cases cited therein).

Accordingly, Jenkins' Sixth Ground for Relief fails to provide a basis for federal habeas relief.

### G.    Ineffective Assistance Of Appellate Counsel

In his Seventh Ground for Relief, Jenkins claims that his attorney on direct appeal provided constitutionally ineffective assistance by failing to raise more meritorious issues than the issues he raised. These more meritorious issues were, according to Jenkins, (1) trial counsel's failure to object to the prosecutor's egregious misstatement during closing and (2) the trial judge's decision to allow a physician to testify about "mathematical probabilities to substantiate the failure to produce physical evidence in support of the allegations, over the objections by [Jenkins'] trial counsel." (Doc. #1 at p. 19).

Jenkins' claim of ineffective assistance of appellate counsel lacks merit, because he can show no prejudice resulting from counsel's failure to raise these two claims during Jenkins' initial direct appeal of Jenkins' convictions. No prejudice exists because the Ohio Court of Appeals reopened Jenkins' direct appeal, *see* Doc. #5, Exh. 10, and provided him with a merits review of these two claims, *see* Doc. #5, Exh. 14. Although the Ohio Court of Appeals ultimately found no merit in

33

these claims, *id*., its merit-based review provided Jenkins with the same potential for appellate relief he would have received if direct appeal counsel had raised these claims during the initial direct appeal.  Consequently, counsel's performance on direct appeal worked no prejudice to Jenkins and did not violate his constitutional rights.  *See Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005).

Accordingly, Jenkins' Seventh Ground for Relief fails to provide a basis for federal habeas relief.

## VI.    JENKINS' TWO REMAINING (NON-IAC) CLAIMS

### A.    Admission Into Evidence Of The Physician' 15% Testimony

Jenkins contends in his Eighth Ground for Relief that during his criminal trial, the judge erred by permitting the physician to testify about unsubstantiated mathematical probabilities. Jenkins claims that this violated his rights under numerous constitutional amendments.  (Doc. #1 at p. 20).

As discussed above, Dr. Hicks, the pediatrician who examined E.E., was permitted to testify that only 15% of the examinations for child sexual abuse reveal physical evidence of such abuse. *See supra*, §III(D).

To the extent Jenkins bases this claim on a violation of Ohio evidentiary law, it is not cognizable in this case.  *See* 28 U.S.C. §2241(a), (c)(3); *see also Williams*, 529 U.S. at 375; *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Federal habeas review "of state court evidentiary rulings is extremely limited.  Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir.1990).

To raise this as a cognizable federal constitutional claim, Jenkins must demonstrate that the

trial court's admission of the Dr. Hicks' 15% testimony violated his right to a fundamentally fair trial under the Due Process Clause. *See Stuart v. Wilson*, 442 F.3d 506, 513 n.3 (6th Cir. 2006); *see also Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983).

When rejecting this claim, the Ohio Court of Appeals explained, in part, "[Dr.] Hicks did not offer his opinion about whether the alleged victims were, or were not, sexually abused...." (Doc. #5, Exh. 14 at p. 12). The Court of Appeals further explained that Dr. Hicks "was merely providing background in the area of expertise, for the benefit of the jury.... If Jenkins wished to test the validity of Hicks' testimony, he was free to cross-examine Hicks concerning the medical literature upon which he based his observation that claims of child sexual abuse are only corroborated by physical evidence about 15% of the time." (Doc. #5, Exh. 14 at pp. 12-13).

Jenkins has not shown that the trial court's admission of Dr. Hicks' 15% testimony did deprived him of a fundamentally fair trial. Instead, fundamental fairness existed during trial because defense counsel was given a full and fair opportunity to cross examine Dr. Hicks, and because defense counsel did so without limitation by the trial court. *See* Trial Transcript at pp. 38-52, 54-56. Such fundamental fairness is all the Due Process Clause guaranteed.

Accordingly, Jenkins' Eighth Ground for Relief fails to provide a basis for federal habeas relief.

### B.    Denial Of Jenkins' Right To Testify During Evidentiary Hearing

In his Ninth Ground for Relief, Jenkins claims that during his §2953.21 evidentiary hearing, the trial court violated his right to due process under the Fourteenth Amendment by refusing to allow him to testify. (Doc. #1 at p. 20).

As with Jenkins' other challenges to the §2953.21 proceedings, "errors in [state] post-

conviction proceedings are outside the scope of federal habeas corpus review." *Cress*, 484 F.3d at 853.

Accordingly, Jenkins' Ninth Ground for Relief fails to provide a basis for federal habeas relief.

## IT IS THEREFORE RECOMMENDED THAT:

1.   John M. Jenkins' Petition for a Writ of Habeas Corpus be DENIED; and

2.   The case be terminated on the record of this Court.

June 4, 2007

    s/Sharon L. Ovington
    Sharon L. Ovington
United States Magistrate Judge

36

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).